1006

```
 1    SUPREME COURT OF THE STATE OF NEW YORK

 2    COUNTY OF NASSAU : CRIMINAL TERM PART 43

 3    ------------------------------------------X
      THE PEOPLE OF THE STATE OF NEW YORK,      :   Indictment
 4                                              :   No. 742N/14
                  -against-                     :
 5                                              :
      DANIEL RAMOS,                             :
 6                                              :
                              Defendant.        :   Jury Trial
 7    ------------------------------------------X

 8                                   May 14, 2015
                                     262 Old Country Road
 9                                   Mineola, New York

10
      B E F O R E:
11
              HONORABLE TERESA K. CORRIGAN,
12                    Acting Supreme Court Justice

13
      A P P E A R A N C E S:
14
      (As Previously Noted)
15

16              *       *       *       *       *

17

18              THE CLERK:  Case on trial continued,

19      Indictment Number 742N of 2014, People of the state New

20      York vs. Daniel Ramos.

21              All parties are present.  The Spanish

22      interpreter, Carmen Knight, is present.

23              Are the People ready to proceed?

24              MR. PERRI:  Yes, your Honor.

25              MR. BERGER:  Yes.
```

1    A F T E R N O O N   S E S S I O N

2

3                          -SEALED-

4          (Whereupon, this is an excerpt of the trial.)

5          THE CLERK:  Case on trial continued,

6    Indictment Number 742N of 2014.  People of the State of

7    New York vs. Daniel Ramos.

8          Let the record reflect all parties are

9    present.  The jury is not present at this time.

10         Are the People ready?

11         MR. PERRI:  Yes, we are.

12         THE CLERK:  Defense counsel ready?

13         MR. BERGER:  Yes, your Honor.

14         THE COURT:  At this point I just want the

15   record to reflect we had a conference in my chambers

16   over the lunch break, and we have agreed we would come

17   out before we went back on the record with the jury and

18   I would allow both parties to put their application

19   and/or position on the record, because of the nature of

20   what is about to be disclosed and discussed.  This is

21   going to be done on a sealed record.

22         Additionally, I'm going to ask that the

23   courtroom be cleared and that the courtroom be sealed

24   just for this limited record that is about to be made.

25         Additionally, this record is not to be

Proceedings                  1078

1    unsealed except by order of this Court or a Court of

2    competent jurisdiction.

3            MR. BERGER:  I would assume the record is not

4    to be sealed, if the record is being prepared in the

5    event there is a need for an appeal.  All of this

6    should be part of the record.

7            THE COURT:  At the point in time there is a

8    need for an appeal, there will be an application for

9    this portion to be unsealed, and it be unsealed at that

10   time.  I'm not going to cross a bridge before I get to

11   it.  For the purposes of today, this record is sealed

12   as agreed to by all parties when we were in chambers

13   prior to the lunch break.  So, the record should now

14   reflect the courtroom has been cleared.

15           Mr. Berger, I'll hear from you.

16           MR. BERGER:  I'm not sure whether when we

17   agreed to seal it that we agreed it would have to be

18   unsealed by a Court order in the event the appeal is

19   required.  I'm making a motion for, I'm making a

20   motion, obviously, in the event that there is a

21   conviction, we do want this to be part of the record

22   for appeal.  We brought this matter to the attention of

23   the Court to determine whether or not there would be a

24   civil rights violation under Article 50.  It appears to

25   be at the conclusion of Judge Quinn, who is the

Proceedings                    1079

1    supervising judge of the Criminal Court, County Court

2    here in Mineola, that we weren't running a civil rights

3    violation.  You had mentioned you wanted to seal it.

4    I'm not exactly sure what you meant by that other than

5    the fact other people shouldn't be in the courtroom

6    when this application is being made, but I'm certainly

7    not going to ask that the Court, if it's you or anybody

8    else, has to approve of this application being revealed

9    in the event there's a need to be an appeal.  If that's

10   the understanding, I'm not prepared to agree to that.

11             THE COURT:  If there is a conviction in this

12   case and an appeal is sought, I'm confident with a

13   simple request this portion of the record will be

14   unsealed.  I don't know how it could not be unsealed if

15   there was an appeal.  So, for this sealing order to

16   have any teeth and to protect the individuals that it

17   needs to protect, it will be sealed unless a Court of

18   competent jurisdiction agrees to have it unsealed.  I

19   can't imagine there would be a Court, knowing that

20   there is a conviction, and an appeal would ever deny

21   such a request, but I'm not going to order something

22   that has absolutely no teeth and absolutely no bearing

23   on anything by saying it's sealed just because I say so

24   and whatever happens, happens.  I'm not going to put

25   the court reporter in the position of having to

kmm

Proceedings                    1080

1    determine whether or not there was a conviction or not

2    a conviction when these minutes are ordered.   In an

3    effort to have this sealing matter and have teeth and

4    in an effort to not put the onus on the court reporting

5    staff to have to make a determination as to whether or

6    not there was a verdict of guilty in this case before

7    turning these minutes over, this application will be

8    sealed except for the Court record, which will then

9    have an unsealed, which I'm confident will be easily

10   obtained should there be a conviction in this matter.

11            That being said, please make your

12   application.

13            MR. BERGER:  My intention was not to put the

14   court reporter in a difficult position.

15            THE COURT:  That would be the reality of it.

16            MR. BERGER:  If anybody other than the

17   attorney for the defendant should make the application

18   in the event there is a conviction, certainly, the

19   Court order -- I would expect the Court order to be

20   required.  But in the event it's only the defendant's

21   attorney on an appeal, then we shouldn't have to agree

22   to seal it.  The Court understands that would be an

23   appropriate time to unseal it so it could be part of

24   the record.

25            THE COURT:  That's all I'm saying.  My ruling

kmm

1   with regards to the sealing stands at this time.  There

2   will be an order requiring an unsealing should there be

3   a conviction in this case.  Let's get to the

4   application.

5          MR. BERGER:  It has come to my attention,

6   actually, yesterday, today is the first time I'm

7   looking at the documents, is that the brother of the

8   complainant in this case, was sexually abused when he

9   was three years old.  It turns out that our office

10  represented him back in 2007.

11         THE COURT:  Represented who?

12         MR. BERGER:  The defendant, the brother, we

13  obtained the files from our -- where we keep our

14  disposed of files that are old in a warehouse, I

15  believe.  And we learned that the complainant in that

16  case was, according to the felony complaint -- let me

17  say the defendant in that case, on or about the 25th

18  day of August of 2007, at about three o'clock in the

19  morning, at the residence of Crystal Ramirez and her

20  son, the complainant alleges that the defendant did

21  subject the three-year old male victim to sexual

22  contact in attempt to put the victim's mouth on his

23  erect penis while lying on his back.  The defendant did

24  push the victim's face to the penis and made contact

25  with the victim's face.  The complainant in this case

1    is Crystal Ramirez.  That's how it is listed in the

2    complaint, even though she is not actually the victim.

3    While in the room watching television, did hear the

4    victim make a whining noise.  I point out for the

5    record, hear, is spelled H-E-R-E, when it was intended

6    to be H-E-A-R.  The complainant did turn toward the

7    Futon and observed the defendant's penis out of the

8    boxer shorts and making contact with her son's face.

9    The complainant immediately removed the victim from the

10   bed and room.

11          Attached to the complaint is a statement by

12   Crystal Ramirez, in which she says she observed the

13   defendant with his penis exposed, attempting to force

14   her son to perform oral sex on him.  She says, I

15   immediately got up and yelled at him, at him being the

16   defendant, and I explained everything to my

17   ex-boyfriend, Christian Feliciano, and I think this

18   statement is a mistake, because it's not intended to --

19   Christian Feliciano, who is the father of the two

20   children here, but rather his brother.  Not mentioning

21   his name at this point, he's our client.  I don't know

22   that it's actually necessary for me not to mention his

23   name.  Actually, I probably should put it on the

24   record, Alex Feliciano.  She says I called the police,

25   he ripped the phone off the wall, pulled my hair and

Proceedings                    1083

1    tore my shirt.  She says Christian had attempted, but I
2    don't think it's Christian, I think it's Alex attempted
3    to take all of the food out of the refrigerator, but
4    during the ensuing argument, the bag ripped, and the
5    food was thrown and kicked everywhere.  I did not give
6    anyone permission to damage my property or abuse my
7    son, and I want those responsible arrested.
8            When we learned that yesterday, the facts
9    there are so eerily similar to what is alleged here.  I
10   was not aware that Crystal Ramirez was actually
11   observing what Alex did, the defendant did to her son.
12           So, here we have a situation in which she is
13   in some way responsible, at least she could certainly
14   feel that way, that she is allowing this individual or
15   hosting this individual, he's in her house, he's
16   sleeping in her Futon at three o'clock in the morning.
17   She is watching television, and he's engaging in this
18   kind of behavior with her son.  I'm sure there's
19   responsibility or guilt on her part that she is there.
20   She wasn't monitoring the situation in any case.  This
21   is terribly traumatic to her.
22           Our position is that having gone through this
23   experience before, and it appears from what she sees
24   when she walks into the kitchen, this case, that
25   something similar may be going on as to what had

Proceedings                    1084

1    happened before.  We should be able to demonstrate to

2    this jury that this woman had experienced this

3    traumatic situation before, that her frame of mind was

4    such that she's assumed this may be going on again, if

5    this were not something she had engaged in before, but

6    just happened to be the mother of a victimized child,

7    there would be a difference.

8            But this is so eerily similar that you

9    couldn't be a mother and not have reacted emotionally,

10   and our position is not carefully -- she did react

11   hastily and emotionally, and may have came to a

12   conclusion.  Whether or not this is true, the jury

13   should be able to know this fact.  There cannot be a

14   distinction made on the basis of differences that are

15   not significant.  What is significant, is that this

16   woman, Crystal Ramirez, observed it then and while she

17   didn't observe sexual abuse this time, her reaction

18   should be known to the jury to determine whether or not

19   she acted appropriately and fairly here.

20           We know that the children were going to

21   therapy.  We had subpoenaed those records.  Your Honor

22   had looked at those records.  What's interesting to me

23   and has never been answered is, both children were

24   going when Mya had not even been born yet when this

25   happened.  So something in the records that were

1    provided to you compelled someone to determine Mya, as

2    well as Sincere, should be going to therapy.  Why that

3    was happening, your Honor, made a determination that

4    we're not entitled to see it.  We weren't so much

5    interested in the psychiatrist or psychologist

6    treatment plan.  We were interested in what trauma or

7    what reasons the kids were going -- as to whether it

8    bears any relationship as to what happened here.

9             I know you provided me with one page of

10   something that happened about a week or so later, but

11   my position is that what was happening before when the

12   defendant and Crystal Ramirez -- withdrawn.  When

13   Crystal Ramirez admitted that the kids were going to

14   therapy, we say there's a reasonable chance that it has

15   a bearing upon what Mya and what her state of mind was

16   under the circumstances.  You have a woman who,

17   according to Mya, physically abused this six-year old

18   girl, and our position is that I don't see how the

19   trier of the facts, when evaluating what Crystal

20   Ramirez had to say, shouldn't know that this woman went

21   through this similar type of experience before.  Her

22   state of mind, when she is reciting under oath to this

23   Court what she went through that day, is certainly

24   important.  It's a principle of law.  It's a matter of

25   law that the state of mind of an individual who's

Proceedings                1086

1    stating what they observed, what they saw, or tasted or

2    felt, or heard, their state of mind is so significant

3    to whether or not they are accurately reporting

4    anything.

5         So, I don't understand why we're making a

6    point here that this woman has experienced the trauma

7    before and now is, from her perspective, perhaps

8    viewing it again; why that is not relevant to the trier

9    of the facts.

10        We're asking the Court to recall Crystal

11   Ramirez for me to be able to question her concerning

12   this experience.  It goes without saying since we

13   brought this to the Court's attention, any civil rights

14   protections we will honor, but we're not asking to call

15   Mya.  We're not asking to call Sincere.  We're going to

16   call just Crystal Ramirez.

17        THE COURT:  People.

18        MR. PERRI:  Thank you, your Honor.

19        First, just the People would like to clarify

20   some of the facts that were asserted by defense counsel

21   repeatedly, and the People have a letter application

22   with regard to this defense counsel repeatedly

23   characterizes Crystal Ramirez as a physically abusive

24   parent.  The only testimony with regard to that is from

25   Mya that she was whooped by her mother when she was

1    bad.   There is no testimony in the record saying that

2    she exceeded her statutory rights to discipline her

3    child.

4            With regard to the disclosure of this

5    information, defense counsel has had constructive

6    possession of all of the information he just recently

7    came into physical possession of throughout the

8    pendency of this case.

9            Additionally, defense counsel was made aware

10   on Monday of the name and the relationship between the

11   defendant, Alex Feliciano and Sincere Feliciano

12   Ramirez.

13           Defense counsel also stated we did not know

14   both children or why both children were going to

15   therapy, especially since Mya was not born at the time

16   therapy occurred.   In fact, your Honor did state and

17   the People offered in response to the subpoena, there

18   was an additional domestic violence incident that also

19   required the children to go to therapy.

20           With respect to defense counsel's immediate

21   application, the Supreme Court of the United States in

22   Delaware vs. Argues, 474 US 15, stated that at the time

23   the confrontation clause guarantees opportunity for

24   effective cross-examination, not cross-examination

25   that is effective in whatever way and to whatever

1    extent the defense might wish it to be.  Defense

2    counsel's application to cross-examine, whether it is

3    Sincere, whether it is Crystal Ramirez, whether it be

4    Mya or anyone else, to bring before this jury evidence

5    about a prior conviction that was eight years before

6    the alleged incident that took place in this case,

7    where there is nothing despite defense counsel's

8    assertion to question presently before the Court or

9    anyone on the 32-B filed in connection with the felony

10   complaint relating to Alex Feliciano, where the

11   defendant, Alex Feliciano, pleaded guilty to the top

12   count, attempted criminal sexual act in the first

13   degree.  And when there is no eerily similar factual

14   scenario except for, unfortunately, Crystal Ramirez was

15   previously present in the same apartment where a

16   different child was victimized eight years ago.

17          The facts are strikingly different in that

18   the prior case she states that she viewed the defendant

19   actually make contact between his penis and the face of

20   the child as opposed to, in this case, she has never

21   testified that she viewed the actual sexual act.  Never

22   testified that he nor would she be permitted to testify

23   that she actually believed sexual abuse occurred to her

24   child.  She testified in limited capacity to the fact

25   she observed and to the knowledge that she had as a

Proceedings                    1089

1    witness in this case.

2              Regardless of the fact that she previously

3    observed eight years earlier, the People believe it

4    does not support the speculation and conclusion that

5    she is incapable of perceiving reality, of having the

6    ability to distinguish between historical events and

7    what she is presently viewing.  That assertion by

8    defense counsel is pure speculation, not based upon any

9    diagnosis, any psychological study or evidence in any

10   shape or form before the Court to consider.  The

11   defense does not have the absolute right to

12   cross-examine endlessly.  This has been established in

13   the State of New York in People v. Francisco, 44 AD

14   870.

15              In that case the Second Department stated

16   that the right is not limited and the trial Court has

17   broad discretion to limit the scope of

18   cross-examination when the questions are irrelevant or

19   only marginally relevant concerning collateral issues

20   or pose a danger and misleading the jury.

21              Additionally, the Second Department in People

22   v. Hicks, 88 AD3d 817, in 2011, noted that all

23   cross-examination must be based upon a good faith basis

24   that must perceive.  And it's the People's position

25   there is no good faith basis presently before the Court

kmm

Proceedings                    1090

1    or in possession of defense counsel that necessitates

2    the conclusion that simply because Crystal Ramirez's

3    other child, when he was three years old, was

4    victimized by a separate individual that that then

5    allows for the logical jump to she is no longer able to

6    be a credible witness, or that is even presently still

7    in such a traumatic state present in her mind that is

8    effecting her to this day.

9            That the Second Department in People v. Cato,

10   58 AD3d, 394, noted completely proper to limit

11   cross-examination when even -- when motive to fabricate

12   evidence.  And in People v. Garcia, 47 AD3d, 830, also

13   in looking at motives of a prosecution witness to

14   possibly lie, or to fabricate, or not be able to

15   testify credibly.  It was noted by the Court when

16   evidence is too remote or speculative of motive to

17   fabricate, the trial Court may in its discretion

18   exclude such proof and the Second Department upheld the

19   trial Court's decision to do so.

20           And, again, noticed in that same holding, in

21   that a good faith basis, more than speculation, had to

22   be behind the desire to cross-examine on a specific

23   issue.

24           In People v. Walsh, 35 AD, 637, even when

25   there was an interaction or some evidence in that case,

kmm

Proceedings                1091

```
 1        it was a possible assault between the complainants,
 2        between the witnesses the People put forth, the Court
 3        properly limited cross-examination as even though there
 4        was some prior criminal events that related the various
 5        witnesses.  It was speculative at best that there then
 6        was a factual basis to believe it affected their
 7        ability to testify credibly.
 8              The People would also like to note that there
 9        is no right by defense counsel to recall witnesses.
10        It's left to the trial Court's discretion.  That is
11        pursuant to People v. Gibson, 106 AD3d, 834, wherein
12        the Court held that the defendants -- the Court
13        probably exercised its discretion, and did not deprive
14        the defense of rights to confrontation or
15        cross-examination simply by denying their request to
16        recall a witness.
17              In People vs. Alicea, A-L-I-C-E-A, 33 AD3d,
18        326, the First Department, in reaching the
19        determination that denying an application to recall
20        witnesses was properly noted.  That further
21        cross-examination based on newly acquired -- I'm sorry,
22        withdrawn.
23              That this was a case about defense
24        contention, stating that newly acquired information
25        necessitated the ruling of a witness, but the Court
```

1    noted in making a determination it was not necessary

2    that the information could have been obtained by the

3    defense earlier in the proceedings.  That it was only

4    marginally related to cross-examining and exploring and

5    actual credibility issues of the witnesses.  And the

6    legitimate other concerns in that case was the safety

7    of the witnesses' guide to the Court to not have the

8    witnesses recalled and deny the defense's application.

9            In making the decision, your Honor, in

10   exercising your discretion, I ask you to deny defense

11   counsel's application.

12           In People v. Simmons, 106, AD3d, 115, of

13   2013, where it did note that in making a determination

14   goes with cross-examination in connection with

15   confidentiality, or in this case, it was rape shield

16   law.  There is a balancing test that goes on whether or

17   not Sincere is actually called to testify his identity

18   as a victim as a sexual assault case will be presented

19   in public to the jury, that there is no way around

20   imposing upon those rights that guarantee Sincere a

21   victim of a sex crime whether or not Crystal is still

22   issued, should consider and wait.

23           It's the position -- this is the same

24   application that defense previously raised with you and

25   that the only difference there is more, there is

Proceedings                     1093

1     slightly more information in their possession.

2     However, that information is not -- does not go

3     directly to the credibility of the witness.   Crystal

4     Ramirez's complaint led to the commission of a C

5     violent sex felony.   There's nothing in her complaint,

6     or in the statement or conviction of Alex Feliciano

7     that actually imputes her credibility.   Thank you.

8              MR. BERGER:   I don't know the DA was

9     listening to what I said.   There is something different

10    here.   We did not know that Crystal viewed this

11    incident, number one.   Number two, Mr. Perri cites all

12    kinds of cases about -- first of all, he says that the

13    basis is that I am saying based upon that experience

14    she can't distinguish reality from fiction.   That's not

15    a point I made.   That's a point I made up on the record

16    on some other issue much before that.   Then he cites

17    all these cases on motive to fabricate.   I didn't say

18    anything about motive to fabricate.   Why he says it is

19    totally irrelevant.

20              Then he makes the point, I could have gotten

21    this information before.   That's not accurate, because

22    there was no reason for me to know to get this before,

23    until we were able to get the file.   If it hadn't been

24    for the fact we represented Alex, although years ago we

25    never would have gotten this information.   We now get

Proceedings                    1094

1   the information, his name and present it to the Court

2   and you notice Mr. Perri didn't cite any cases that the

3   state of mind of the witness is not important when that

4   witness testifies.  It's extremely important.  That's

5   what goes on when the Courts make a determination as to

6   whether a witness can testify, if they're competent

7   enough to testify, what their frame of mind is, what

8   their state of mind is.  That's the point I was making.

9           Finally, Judge, this kind -- I mean, nobody

10  is saying there's necessarily a right to recall a

11  witness.  When the Court is exercising its power as a

12  neutral arbiter of the issues that go before in a

13  trial, it has to consider the interest of justice.  Are

14  the rights to keep Sincere's victimization a secret

15  greater than that of a defendant who is on trial for a

16  B felony?  I don't think so.  I mean there comes a

17  point where you may have to make a decision between two

18  very difficult decisions, but when somebody is on

19  trial, it's not a difficult decision from my

20  perspective.  I don't think it would be a difficult

21  perspective and anybody's perspective when you have

22  somebody on trial for a very serious charge versus

23  somebody who has gone through the experience years ago

24  and probably doesn't want to relive it again.  I

25  understand that.  He's not being asked to relive it

1    again.  There is no risk here to Sincere except that

2    the 13 people are now waiting on a jury who would know

3    about it.  They would know about it, but on the other

4    hand, the rights of the defendant, who is accused of a

5    crime, are paramount.

6              THE COURT:  Let me ask you a question.  I

7    appreciate that you're saying state of mind is

8    important.  I don't disagree with you.  State of mind

9    is always important when a witness takes the stand.

10   What I'm trying to understand and comprehend from you,

11   sir, are you saying this woman's state of mind is

12   important because, in fact, this traumatic event that

13   happened years ago has given her a reason to take the

14   stand and lie about what happened in this case because

15   it is your defense that it is all made up; is that

16   correct?

17             MR. BERGER:  It is, but that's not what I'm

18   saying about this woman's state of mind.

19             THE COURT:  Her state of mind is relevant --

20   if it's not relevant because she got on the stand and

21   lied, is it relevant because she got on the stand and

22   told the truth, because it has to be one or the other.

23             MR. BERGER:  No, it doesn't.  The point is,

24   she could be mistaken.  What I'm saying to you, she

25   took certain actions which no one knows what action she

Proceedings                    1096

1    took.  We weren't there.  She was there, Crystal -- I

2    mean, Mya, was there and her son was there.  She did

3    certain things that day that I say influenced her which

4    influenced the complainant's in this case, Mya.  That

5    becomes important.  Those hours or those minutes that

6    occurred subsequent to her walking into the kitchen

7    became very important as to what she did, how she

8    behaved.  It's a product of her history of what she has

9    gone through, and we, as the defendant here, should

10   have the right to challenge whether or not she told the

11   truth, challenge whether or not she acted improperly

12   influencing Mya.  All of those things should be open to

13   the defense when we argue to the jury here.

14        It's not a matter of you're asking me whether

15   or not I'm going to argue that she had lied or not

16   argue that.  That should not be dispositive of the

17   issue.  The issue should be determined.  I should be

18   able to make the arguments I want to make to this jury

19   based upon all of the facts that occurred.  This is a

20   fact that occurred for this woman.  For Mr. Perri to

21   argue it's eight years ago and, therefore, it's

22   irrelevant, it is nonsense.

23        THE COURT:  Thank you, counsel.  I've given

24   both enough time to speak.  I'll make my ruling at this

25   time.

                                                        kmm

1          First, the Court is absolutely aware that

2    state of mind of a witness is always relevant, but the

3    case law is very clear that that which relates to state

4    of mind, if not too remote becomes relevant when an

5    individual testifies.  This is an action that the Court

6    is aware happened six years prior to the incident and

7    just about eight years prior to her testimony here on

8    the stand.

9          The Court notes that the witness, which is

10   Crystal Ramirez, the mother of the child in this case,

11   in the incident from 2007, when putting forth her

12   observations, in fact, had those observations credited

13   by the fact that a plea of guilty was entered.  If, in

14   fact, the Court allowed such remote evidence to be put

15   forth before this jury now, there is a very good

16   possibility that improper bolstering of her credibility

17   would result because the People would have the right to

18   then say that which you observed resulted in a plea of

19   guilty, correct, or words to that effect, and the jury

20   would then know that what she said she saw in 2007 was,

21   in fact, accurate, because somebody was convicted and

22   sent to prison for it.

23         In this case, we don't have Crystal Ramirez

24   saying she saw anything.  We have her saying that she

25   was told something by her child.  The only reason that

Proceedings                          1098

1      came out was to show her next steps, which was to call
2      911 to have the police arrive and to go to the
3      hospital.
4              Additionally, that which happened back in
5      2007, happened at a point in time when Crystal Ramirez
6      did not even have the child that is the victim in this
7      case.  That child was not born yet.  It is extremely
8      remote in time, and if it's not being offered to show
9      that she has made this up, and isn't credible and it's
10     shown -- then it has to be shown for another reason.
11     Either it's shown to show that her state of mind is
12     such that this event didn't happen, in which case that
13     would mean it's a lie, then what happens is she is
14     improperly bolstered because that which happened
15     previously turned out to be true.
16             If it's something other than that, again, the
17     Court would have to allow the People go down the
18     slippery slope of a remote action, possibly having an
19     impact on an individual testifying here today.  That is
20     highly speculative.  That is not required by the law.
21     In fact, it is frowned upon, and the Court does note
22     some of the cases that were provided to me by the
23     People.
24             I want the record to reflect I did give both
25     counsel an opportunity to present to this Court any

kmm

1    cases they wanted to.  I think it is relevant that the

2    case of Garcia from the Second Department at 47 AD3d,

3    830 says, while extrinsic proof tending to establish a

4    motive to fabricate is never collateral and may not be

5    excluded on that ground, when the evidence is too

6    remote or speculative of a motive to fabricate, the

7    trial court may, in its discretion, exclude such proof.

8              Now, I have that as my base and have

9    Mr. Berger saying it's not about her motive to

10   fabricate, it's about her actions.  Her actions are not

11   on trial.  What we all seem to be forgetting in this

12   case is that subsequent to this child going to the

13   hospital there is a statement by the defendant, and

14   there is DNA evidence that points to this defendant as

15   the potential perpetrator of this crime.  That is

16   something the jury will have to decide.  The Court

17   doesn't get to make that decision.  The Court certainly

18   gets to look at all of the evidence before it in making

19   a determination as to whether or not a matter is so

20   completely collateral that it would tend to confuse the

21   jury or even, more so in this case, prolong a trial

22   unnecessarily and bring forth evidence that is to do

23   nothing more than to make a witness relive a traumatic

24   event from at least six years ago, from the time of the

25   incident, eight years, from the time of testimony.  I

1    am not going to allow that to happen.  I don't see it

2    as recent in time, which is what -- the statement of

3    mind cases, both civilly and criminally point to in

4    allowing any witness to testify about recent events

5    that impact on their testimony.

6              The Court notes that those cases say that

7    there must be some evidence that those recent events

8    are impacted on their testimony.  I don't have recent

9    events here.  I have events from 2007.  I don't have

10   anything before me that shows we impacted on anyone's

11   testimony.  In fact, what I now have before me is proof

12   that what was seen and observed in 2007, was, in fact,

13   truthful and accurate because there was a plea of

14   guilty related to it.  It's this Court's concern that

15   if it would occur, if Ms. Ramirez, should I allow such

16   testimony to go in, for all of the reasons I stated, I

17   will not allow this testimony.

18             The defense application is denied.

19             MR. BERGER:  For the record, if I want to

20   allow a witness testifying for the other side to

21   bolster her testimony, that's my problem.  That's my

22   risk.  That's my opening the door.  If I do that, and

23   I'm helping the police, the prosecution, rather, so be

24   it.  That's a determination I should be able to make,

25   not you.  When the prosecutor wants to bolster his own

Proceedings                    1101

1    witness, yes, I make objections to that.  Normally, the
2    state doesn't allow bolstering.  If I'm going to do it
3    because there's a benefit for me, that should be my
4    problem, not yours.

5           Secondly, you assumed my arguments that I was
6    going to make, when I discussed Crystal in summation.
7    You determined I was going to be fabricating or doing
8    something, whatever.  The Court doesn't have the right
9    to assume the arguments I'll make.  All the Court
10   should be determining is whether or not her state of
11   mind becomes relevant in making observations.  What you
12   are saying is too remote.

13          Let me tell you, you could have a traumatic
14   experience twenty years ago and it not be too remote.
15   It could still be staying with you.  Recent, you now
16   read cases about recent.  Recent could be years and
17   sometimes it is not recent enough if it's a week.  You
18   could make it anyway you like.

19          THE COURT:  Did you bring a single case that
20   shows me state of mind and recent twenty-year timeframe
21   or sick-year timeframe is actually relevant?  I have to
22   tell you, again, only because I'll make the record as
23   complete in reading Prince Richardson on evidence under
24   state of mind in addition to other areas on witnesses
25   and their testimony.  There's not a single case listed

kmm

Proceedings                    1102

1       in civil or criminal where it was allowed to be

2       discussed in a timeframe that was six years or greater.

3       All of the timeframes listed were -- some of them were

4       hours, some were days, some were weeks.  One case I

5       read was two months, nothing longer than that.

6              Again, we can talk about this until we're

7       blue in the face.  I want you to put your exceptions to

8       my ruling on the record so the record is protected and

9       then I want to proceed with this trial.

10             MR. BERGER:  One last point.

11             THE COURT:  Go ahead.

12             MR. BERGER:  It doesn't require the case for

13      the trier of the facts to look at somebody's experience

14      and see if they were in a war and they had trauma that

15      can -- they could still be suffering post-traumatic

16      distress order.  It takes somebody to make a

17      determination for common sense.  Yes, one could still

18      suffer from traumatic experience years earlier.  You

19      don't need a case to point that out.  You need a case

20      when you arrest somebody and want to show up and you

21      have a determination within minutes or hours as to

22      whether they showed up within the appropriate period of

23      time.  Those are limited cases on specific areas of law

24      that require the courts to make a determination.

25             And finally, Judge, it is totally irrelevant

                                                        kmm

1    for you to consider the DNA evidence or statement when

2    making a determination here.  What you are saying by

3    using that is you feel the evidence is overwhelming at

4    this point.

5              THE COURT:  It doesn't matter what I feel.

6    It's up to how the jury feels.  I only have to make a

7    legal determination, and I get to use whatever evidence

8    and information is before me to make that legal

9    determination, counselor.  At the end of the day, you

10   want to put in that it is extremely remote.  I have

11   asked you what is the purpose of putting in that

12   testimony.  You have not really stood firm on either,

13   because either it's testimony that makes this witness

14   not able to recall and recount a truthful statement,

15   i.e., a fabrication, which is what you told by your

16   defense is, in this matter.  You didn't make that up,

17   or it's the fact that she's credible because, in fact,

18   the reality of what happened then was proven to be so

19   through a verdict of guilty.  Neither one of those

20   positions has, for allowing me to let you go into this

21   testimony, so I am not going to allow it at this time.

22             MR. BERGER:  You are assuming you know the

23   purposes.  I want this in for --

24             THE COURT:  Counselor, you have to tell me so

25   I can make a legal determination.  I've heard from you.

1      I heard what you said.

2              MR. BERGER:  Her state of mind becomes

3      important how I use that to the jury.  It is not for

4      you to guess at now.  I should be able to use it in the

5      way I see fit.  If you think her state of mind is not

6      important in this case, I understand you will make that

7      determination.  But to go in and decide because there's

8      DNA here and confession here, that should in any way

9      affect your judgment if there is no DNA here, and no

10     so-called confession would you then allow it.  I don't

11     think that DNA and statement are at all relevant to

12     your determination on this issue.

13             THE COURT:  My determination on this issue

14     with regards to your request that this testimony be

15     allowed because it goes to state of mind without any

16     further explanation, is denied by the Court as being

17     too remote, in addition to all of the other reasons why

18     the Court doesn't have to allow this testimony in.

19     That's the end of the discussion.

20                 Let's call the jury in.

21                 (Whereupon, a short recess was taken.)

22                 (Whereupon, the jury entered the courtroom.)

23             THE CLERK:  Do both sides stipulate all sworn

24     jurors are present?

25             MR. PERRI:  Yes.