```
 1   STATE OF NEW YORK      :      NASSAU COUNTY
     SUPREME COURT          :      PART 43
 2   ----------------------------------------x

 3   THE PEOPLE OF THE STATE OF NEW YORK,

 4          -against-                          INDICTMENT NO.
                                               742N/14
 5   DANIEL RAMOS,
                                               NYSID NO.
 6             Defendant.                       9900205N

 7   ----------------------------------------x
                   252 Old Country Road
 8                 Mineola, N.Y.  11501

 9                 July 24, 2015

10                 MINUTES OF SENTENCE

11


12   B E F O R E:    HON. TERESA K. CORRIGAN
                     Acting Supreme Court Justice
13
     A P P E A R A N C E S:
14
                     HON. MADELINE SINGAS
15                   Acting District Attorney of Nassau County
                     BY:  ANTHONY PERRI, ESQ.,
16                   Assistant District Attorney,
                     Of Counsel, for the People
17
                     HON. KENT MOSTON
18                   NASSAU COUNTY LEGAL AID SOCIETY
                     Attorney for the Defendant
19                   40 Main Street
                     Hempstead, New York  11550
20                   BY:  MICHAEL BERGER, ESQ.

21   ALSO PRESENT:   Rodolfo Escalante,
                     Official Spanish Interpreter
22

23


24                   Cindy Kaye-Fink
25                   Senior Court Reporter
```

1          THE CLERK:  Indictment 742N of 2014, People of

2     the State of New York vs. Daniel Ramos.  Appearances,

3     for the record.

4          MR. PERRI:  Assistant District Attorney

5     Anthony Perri.

6          MR. BERGER:  Michael Berger, Legal Aid

7     Society.

8          THE CLERK:  And you are Daniel Ramos?

9          THE DEFENDANT:  Yes.

10          THE CLERK:  And you appear with your attorney,

11     Mr. Berger, who is seated at the defense counsel table

12     with you?

13          THE DEFENDANT:  Yes.

14          THE CLERK:  Let the record reflect there is

15     also a sworn Spanish interpreter present.

16          And sir, could you please put your appearance

17     on the record.

18          THE INTERPRETER:  Rodolfo Escalante, court

19     interpreter.

20          THE CLERK:  This case is on for sentence

21     today.  Is your client ready for sentence?

22          MR. BERGER:  Yes, your Honor.

23          THE CLERK:  People wish to be heard before

24     sentence is imposed?

25          MR. PERRI:  Yes, your Honor, the People will

Proceedings                                    3

1     be recommending to the Court that the defendant, having

2     been convicted of a Class B violent sexual felony, be

3     sentenced to a period of incarceration of 20 years.

4          We have had multiple conversations with the

5     victim and her mother, Crystal Ramirez, after the trial

6     was completed.  The defendant was convicted.  The family

7     has repeatedly asked us to express to the Court their

8     desire that the defendant be sentenced to the maximum

9     period of incarceration of 25 years.

10         Crystal Ramirez, the mother of the child

11    victim, who was six years old on the date of incident,

12    expressed that the trauma of having to testify at trial

13    for both her children that the defendant put them

14    through, and the ongoing necessity of both therapy for

15    her daughter, her daughter still referencing the events

16    that have occurred and expressing fear the defendant

17    would ever be released from jail, have impelled her to

18    ask us for a period of maximum incarceration.

19         The People are asking for 20 years, however,

20    your Honor, in light of the fact that the defendant does

21    have no prior criminal contact with the criminal justice

22    system, but this defendant turned down other multiple

23    recommendations by the People on the B felony, including

24    five years prior to indictment, ten years prior to

25    trial, and as he has shown no remorse for his actions

1      and not acknowledged any of his guilt, taking the stand

2      at the trial and providing implausible, from the

3      People's position and from the jury's determination, an

4      implausible story as to how his DNA was on the inside of

5      Mya Ramirez's underwear in a saliva stain, the People

6      say that that is an exacerbating circumstance.

7              Additionally, defense counsel elicited

8      testimony from Mya Ramirez at trial, although the Court

9      did rule in defense counsel's favor with respect to a

10     Molineux application of multiple other instances of

11     sexual contact between this defendant and the child

12     victim, Mya Ramirez, that included not only oral sex

13     with which he was charged, but attempted anal sex with

14     Mya Ramirez, and that there was not simply one instance,

15     but multiple prior instances that she consistently

16     testified about in a limited credible manner stating

17     that there were five other incidents or five total

18     incidents that had occurred.

19             Your Honor, the Court should take that into

20     consideration as it considers the character of the

21     defendant, the nature of the defendant's conduct, and

22     that he was convicted of one instance that was actually

23     part of a course of conduct against this child.

24             For these reasons, your Honor, the People ask

25     the Court to sentence the defendant to a period of

Proceedings                                          5

1      20 years of incarceration and that afterwards a maximum

2      period of post-release supervision, your Honor.   Thank

3      you.

4                THE COURT:   Thank you.

5                THE CLERK:   Counsel, do you wish to be heard

6      before sentence is imposed?

7                MR. BERGER:   Yes, your Honor.   For Mr. Perri

8      to ask this Court for 20 years, to me is beyond the

9      realm of sanity, of reasonableness, because the People,

10     as Mr. Perri stated, asked for five years

11     pre-indictment, which is the minimum, seven years prior

12     to trial, and that would mean that they determined that

13     those minimal sentences were reasonable for these acts

14     committed, based upon the defendant's lack of any prior

15     record.

16               So it's distressing to hear Mr. Perri ask for

17     that and I would ask the Court to consider in the

18     remarks that I'm making today on behalf of Mr. Ramos,

19     that it's Mr. Perri, who has extremely limited

20     experience in these sex cases, I've been doing it for

21     nearly 44 years with the Legal Aid Society and

22     practicing for 50, and for him to make a recommendation

23     of 20 years under these circumstances, shows to me a

24     lack of serious judgment.

25               Now, I would suggest to the Court that

1    Mr. Perri's lack of serious judgment was exhibited

2    through the trial when, for example, he cited the Ludwig

3    case to you to support a principle of law --

4              MR. PERRI:  Your Honor --

5              MR. BERGER:  Excuse me, Mr. Perri, I didn't

6    interrupt you.  This is counsel's argument to the Court.

7              THE COURT:  So Mr. Perri, we're going to let

8    Mr. Berger speak and then you will have a chance to

9    respond.

10             MR. BERGER:  To cite the Ludwig case to the

11   Court to support a principle that we had a legal

12   argument during the trial and then it was clearly

13   evident after reading the case, and the Court as well

14   acknowledged the Ludwig case didn't apply, just

15   suggested to me that Mr. Perri engaged in all sorts of

16   conduct here at this trial that didn't matter whether or

17   not it was legally arguable.  The Ludwig case, he just

18   threw it out there in the hope that maybe the Court

19   would buy it.

20             And I understand the Court didn't feel that

21   Mr. Perri made any bad-faith arguments during the course

22   of summation.  You and I, we respectfully disagree on

23   that point.  I pointed that out at the time.  There's

24   such a thing, Judge, as wanting to win so badly that you

25   go beyond what's reasonable and you become excessive in

1          your zealous representation of the People.  That's what

2          I suggest to this Court Mr. Perri did.  And that's what

3          I suggest to the Court is evident here during the course

4          of this recommendation of 20 years.

5                    The height of Mr. Perri's bad faith argument

6          was when he suggested to the jury that our DNA expert

7          could have tested and made tests to establish whatever

8          the support for the argument that I had made during

9          summation.  Clearly this was engaging in burden

10         shifting.  Clearly the judge, you had to correct that in

11         your charge to the jury.  So Mr. Perri was either

12         ignorant of the rules in the County Court and that you

13         don't engage in burden shifting or he knew about it and

14         went ahead and did it anyway.  In either case, it's a

15         reflection of Mr. Perri's either poor judgment or

16         ignorance that he did those things during the course of

17         this trial.

18                    Now, Mr. Perri brings up the fact that there

19         was a Molineux application.  If you recall, Judge, the

20         Molineux application was -- and of course, Judge, this

21         is all in the contexts of the defendant never having

22         done anything here.  I understand the jury has spoken,

23         and I will not contest that at this point.  I will

24         contest it factually, that Mr. Ramos did anything here,

25         but Mr. Perri, in making a Molineux application to the

 1    Court, made the claim that the defendant put his penis

 2    on Mya's butt, not in her butt, on her butt.  And then

 3    Mya Hernandez [sic] makes the statement while she's

 4    testifying here at trial, that the defendant put his

 5    penis in her butt five times and then it changes to

 6    three times or two times, but the point is that it now

 7    became in her butt, which is belied by the nurse

 8    examiner's testimony that she thoroughly examined the

 9    girl, thoroughly got a history, no mention of penis in

10    the butt at all.  The physical findings in the medical

11    report do not show anything about a penis going into the

12    butt of a six-year old, which would have really caused

13    some kind of trauma and damage there.  None of that was

14    there.  And yet, Mr. Perri adopts that in his summation

15    to the jury.  He actually adopts the statement made by

16    Mya, which was never made to him, except she made this

17    claim on the witness stand about pecker in the butt, and

18    he adopts it.

19             And I suggest, your Honor, there's something

20    improper about doing that.  When you, as a district

21    attorney, spoke to the witness, know that in fact the

22    witness has said he put his penis on her butt and then

23    adopts in summation a claim by Mya which he should know

24    from the factual evidence from the nurse examiner's

25    report, can't be true, but he adopts it anyway.

1          So when you combine that with his burden

2     shifting attempt in his summation, I just suggest that

3     the recommendation by Mr. Perri should not be taken

4     seriously, when, in fact, the People had been ready to

5     give him five years pre-indictment and seven years post-

6     indictment.

7          Now, Judge, we've had our legal disagreements

8     during the course of this trial, but the jury has

9     spoken.  You must act accordingly.  But I would suggest

10    to your Honor that when you have a situation in which

11    the minimum is five and the maximum is 25, you can't get

12    a better case than this to give the minimum.

13         Mr. Ramos has led an exemplary life.  These

14    charges have besmirched his reputation, but other than

15    that, we brought in character witnesses, people who are

16    not related, who had dealt with Mr. Ramos and he, having

17    dealt with their children, had only the kindest and best

18    things to say about him.

19         Mr. Perri would make -- have you believe that

20    this is a person who has engaged in this kind of

21    reprehensible conduct throughout his life with children

22    and that's not demonstrated at all.  He couldn't even

23    bring in evidence of a negative character of Mr. Ramos

24    and he could have done that, but he didn't do it,

25    because there was nobody to say anything negative about

1    Mr. Ramos and his dealing with children and his kindness

2    and gentleness with children, which we demonstrated here

3    during the course of the trial.

4           So we have a situation in which a man lives an

5    exemplar life as a bus driver for children.  Nobody ever

6    complains about his behavior towards children there.   In

7    his dealings socially with friends of the family who had

8    always brought their children over his house, nobody

9    made any complaints there, but what do we have in this

10   situation?  We have a woman, who even by Mr. Perri's own

11   admission is crude, classless, in my view, who did so

12   much damage to her children.  Judge, she is the one --

13   you know, this charge, the charges the defendant with

14   acts that affect the moral well being of a child.  It is

15   Mya's mother who has done more damage to the moral well

16   being of not only Mya, but Sincere.

17          Now, often we hear in these cases, if you go

18   to trial, you have to pay a penalty for going to trial.

19   And what I'm suggesting to the Court here, this is one

20   of those rare cases when you have an individual with an

21   exemplary life, one son who's in the military, another

22   son who's a working person, and you have somebody with

23   an exemplary life, you don't punish somebody for going

24   to trial when he claims he's innocent.  The Court

25   regrettably must impose a sentence of at least five

Proceedings                                    11

1    years, but we don't punish people for making them go to

2    trial.

3           Now, often the argument is by the prosecution,

4    Mr. Perri didn't say it, but I've dealt with enough of

5    the sex cases to know, and we want to spare the children

6    from testifying in court, and yes, that's an argument

7    that can be made, except that it shouldn't apply to

8    Mr. Ramos for two reasons.  One, he maintains his

9    innocence and he should be entitled to have a trial by

10   jury, and two, Mr. Perri wasn't thinking about the

11   children when he put Sincere on the witness stand.

12          Now, we saw Sincere.  Sincere is a victim of

13   sexual abuse.  We know that.  That happened to him when

14   he was three or four years old.  We witnessed his

15   demeanor on the witness stand and on the witness stand,

16   his head would drop, questions would be asked and ten,

17   15 seconds would go by before he gave an answer.  He'd

18   look around in an uncomfortable way.  This is a

19   youngster who was really, really in trouble and troubled

20   and troubled, we know he's troubled.  You take a look at

21   Mya, Mya's demeanor was nothing like that at all.  These

22   things were fictions made up.

23          I made my argument in summation.  I understand

24   the jury has spoken, but when you take a look at Mya --

25   by the way, Mr. Perri talks about therapy, Mya was going

Proceedings                                                12

1        to therapy in this place, in the South Shore Guidance

2        Center, before any charges here were even made.

3                Now, we were not privy to that, I understand,

4        but the point is, don't talk about therapy required for

5        the children and therefore, they want 20 years or

6        25 years, when she was going to therapy before this

7        incident was even charged.  And I'm suggesting to the

8        Court that it was Mya and Sincere's mother who was a

9        drinker, a smoker, a partier.  Mr. Ramos would baby-sit

10       for the kids when she went out partying.  You heard

11       testimony with respect to what little regard she had for

12       her children at times when she was doing the drinking

13       and partying.  I mean, this is the person who has done

14       more moral damage to the children than anyone.

15               Now, I just would like to point out that while

16       it does go to the credibility of Mya, and that's not an

17       issue now for the sentence, but you should be aware of

18       the following, Judge.  The probation report that I have

19       read suggests that not only did the defendant do what is

20       claimed he did in licking her cuchi on the date in

21       question, but the probation report also says that Mya

22       says Mr. Ramos forced her to lick his pecker.  That was

23       the language there.  Then we have the claim about penis

24       on the buttock, then we have the claim about the penis

25       -- the pecker in the butt.

1              So we now have four different claims of acts

2      claimed by this girl, only one other one was given to

3      Mr. Perri by Mya two months or -- one to two months

4      prior to the beginning of the trial, and that was pecker

5      on the butt.  So we have a young girl whose credibility

6      is seriously in question and if the People are going to

7      attempt to claim, as Mr. Perri did, about other acts

8      that had gone on, then you must take into consideration

9      the fact that from my perspective, there were no other

10     acts, that the credibility of Mya is in serious doubt,

11     now that we've added a fourth sexual act that was

12     alleged to have occurred.

13             The fact of the matter is that the person to

14     blame primarily for all of this is Crystal Ramirez, Mya

15     and Sincere's mother.  She was present when Sincere was

16     violated when he was three years old, actually in the

17     room when his uncle forced Sincere to engage in sexual

18     acts.  And that's why we see Sincere here.

19             So if Mr. Perri was caring about the well

20     being of a child and the trauma to Sincere, he should

21     never have put him on, because all Sincere did was get

22     up there and a give ridiculous testimony about he denied

23     it, he denied it, he denied it and then he admitted it.

24     And nobody else confirmed that.  He was standing on the

25     porch with Crystal and Mya, though Mya is too young

Proceedings                                        14

1    perhaps to remember that, but Crystal never said that

2    that's what Daniel Ramos said.  It wasn't really

3    necessary to put him on the witness stand.  In fact, the

4    expert called by Mr. Perri talked about engaging in

5    conduct that enables you to gain the confidence of the

6    parents so you can be alone with them and do whatever

7    sexual acts you want.  That didn't even happen here.

8    Sincere was in the house, Crystal was there and Crystal,

9    according to her testimony, was expecting all kinds of

10   people to come over, because there was the death of a

11   friend.  So where was this devious act to try to get Mya

12   alone?  It wasn't there.  It doesn't exist.  What I'm

13   suggesting is that if anybody is guilty of doing damage

14   to these children, it's Crystal.

15           Now, finally, Judge, it seems to me that if

16   the legislature passes the law that says five is the

17   minimum and 25 is the max, you should not penalize

18   Mr. Ramos for going to trial and exercising his

19   constitutional right to a trial by jury.  I think if you

20   were to give him the minimum, which the People were okay

21   with five pre-indictment, and they were okay with seven

22   post-indictment.  What Mr. Perri is saying to you is

23   that we should penalize a person for going to trial.

24           Now, I understand that's the rule in

25   95 percent of the cases, because very often we have

1    somebody with a prior record and he doesn't like the

2    numbers, he goes to trial.  But when you have somebody

3    with an unblemished record, pristine record, going to

4    trial in a case like this, it seems to me, Judge, you

5    should not impose a punishment for going to trial under

6    these circumstances.

7              THE COURT:  Thank you, Mr. Berger.

8              Mr. Perri, let me just hear from -- actually,

9    Mr. Perri, go ahead and make your record.  Just don't

10   rehash the trial, I sat through it.  Just with regards

11   to what you feel needs to be addressed.

12             MR. PERRI:  Your Honor, the People would just

13   like to put on the record that they dispute the

14   characterization of the defense of the testimony that

15   was put forth at trial and urge the Court to disregard

16   the multiple unfounded, irrational personal attacks by

17   the defense on the People, on the prosecution in this

18   case and on Crystal Ramirez, the mother of the victim.

19             The People are not asking the Court to punish

20   the defendant for exercising his constitutional rights.

21   The People's recommendation of five prior to indictment,

22   seven years prior to hearing and ten priors to trial,

23   years of incarceration, are reasonable, that as defense

24   counsel has just exhibited, shows in his argument, the

25   defendant has no remorse for his actions and does not

1       accept any responsibility for his actions and that is

2       the reason why by going to trial and still to this day

3       not accepting responsibility, an enhanced level of

4       punishment for that and for putting the children through

5       the trial is required, your Honor.

6                  THE COURT:  Thank you.

7                  MR. BERGER:  Judge, just to response to the

8       last comment.

9                  THE COURT:  You have one minute.

10                 MR. BERGER:  What Mr. Perri is saying is that

11      he has no remorse.  Does Mr. Perri not realize that

12      people go to trial who are innocent?  Does he not

13      recognize that the system is flawed and sometimes the

14      innocent get convicted?  Does he not realized that new

15      evidence, DNA and other evidence coming to light years

16      later after convictions exonerate people?  Mr. Perri

17      expect Mr. Ramos to admit and be remorseful when his

18      position is that he didn't do anything and didn't do

19      what was charged here?  I mean, that just again,

20      reflects an unrealistic evaluation and analysis of what

21      happens here in this court system.

22                 THE COURT:  All right.  Thank you.

23                 Please ask the defendant if he would like to

24      speak.

25                 THE CLERK:  Mr. Ramose, is there anything that

1          you wish to say before sentence is imposed?

2                    THE DEFENDANT:  I just used to help the woman.

3          I just used to help the mother with her childs [sic] and

4          I didn't want anything in return on good faith.  I just

5          used to help her, without getting anything back from

6          her, not even a favor from her.  Everything they are

7          saying here, what he says is just lies.

8                    THE COURT:  All right.  Thank you.  Let me

9          just start by saying that when the Court imposes a

10         sentence after trial, it is not imposing a sentence that

11         is a penalty for an individual going to trial.  There is

12         no place for that and that is not how this Court

13         operates.  So this sentence is not in any way, shape or

14         form a penalty for going to trial.  Rather, it will be a

15         sentence that is allowed by the legislature when it put

16         forth the sentencing guidelines for a conviction for

17         this level felony.

18                    Second, let me say that what could be

19         characterized and what Mr. Perri characterized as the

20         personal attacks against him during this sentencing

21         procedure is also going to play no part in the Court's

22         sentencing.  I will state, however, that throughout the

23         trial, I did not find that the People acted in bad faith

24         at any turn, nor did I find that Mr. Berger acted in bad

25         faith at any turn.

1          That being said, let me turn my attention to

2     Mr. Ramos.  I say to you, sir, and I note from the

3     probation report, that you profess your innocence, and

4     after a jury has found you guilty, you profess your

5     innocence, despite your statement to the police, a

6     statement you admit is yours, but for those sentences

7     that specifically mention the criminal activity.  You

8     profess your innocence, despite the fact that your DNA

9     was found on the inside of the child's underwear in the

10    vaginal area.  You put forth an expert regarding that

11    DNA and the jury clearly rejected your explanation as to

12    how your DNA got on that part of the underwear.

13          You told this jury how you barely spoke

14    English, yet you interacted with this family, who only

15    spoke English, on a daily basis.  You say you barely

16    spoke English, yet you had a job that required you to

17    have a command of the English language.  You have told a

18    tale at every turn, trying to blame everyone but

19    yourself, going so far as to have your attorney blame

20    the mother here at sentencing.

21          You have shown no remorse.  You have accepted

22    no responsibility.  The jury has spoken and now the

23    Court will speak.

24          It is the judgment of this Court that for the

25    crime of criminal sexual act in the first degree, a

1    Class B violent felony, in violation of Penal Law

2    section 130.50, subdivision 3, for which you stand

3    convicted under indictment number 742N of 2014, and in

4    satisfaction thereof, you are hereby sentenced to

5    15 years of incarceration with ten years of post-release

6    supervision.  That will keep you under the watchful eye

7    of law enforcement for the next 25 years.

8           On the charge of endangering the welfare of a

9    child, a Class A misdemeanor, in violation of Penal Law

10   section 260.10, subdivision 1, you are sentenced to one

11   year incarceration, to run concurrent to the 15 years.

12          There will be a $300 surcharge, a Crime Victim

13   Assistance fee of $25, a DNA fee of $50, a SORA fee of

14   $50 and a supplemental Crime Victim Assistance fee of

15   $1,000.

16          There will be a permanent order of protection

17   issued in this case.  People, I ask you to get that

18   ready shortly.

19          MR. PERRI:  We have already handed it up, your

20   Honor.

21          THE COURT:  Very good, and we will adjust the

22   year accordingly for the sentence.

23          Additionally, Mr. Ramos, you will be subject

24   to sex offender registration at the time of your release

25   from incarceration and you are ordered to pay

1    restitution in the amount of $190.44.  That is payable

2    to Medicaid slash --

3                 MR. BERGER:  I didn't get the sum, Judge.

4                 THE COURT:  $190.44 and that is payable to

5    Medicaid/DS, and Mr. Berger, if you need the statement

6    that shows that amount, we can provide a copy to you

7    with regards to that.

8                 MR. BERGER:  Yes, I would like that.

9                 THE COURT:  All right, and we'll make sure we

10   take care of that.

11                Mr. Berger, do you want the fees and

12   surcharges by civil judgment?

13                MR. BERGER:  I do, please.

14                THE COURT:  All right.  But I am going to

15   allow it to be taken out of inmate funds.

16                THE CLERK:  Is he right-handed or left-handed?

17   We need him to sign the order of protection.

18                THE COURT:  All right.  The defendant has

19   signed in open court the order of protection, which he

20   will receive a copy of shortly.

21                Mr. Ramos, just so you hear it from the Court,

22   you are ordered to stay away from the individual listed

23   in this order, Miss Mya Feliciano Ramirez, wherever she

24   might be, including her home, school, place of business

25   and place of employment.  You cannot get in touch with

1     Miss Ramirez in any way, shape or form, no letter

2     writing, no telephone calls, no electronic communication

3     and you cannot ask friends, family members, fellow

4     inmates or even perfect strangers to get in touch with

5     her on your behalf.

6            Additionally, you cannot commit any of the

7     acts listed in this order against Miss Ramirez and upon

8     your release from incarceration, if you are in

9     possession of any of the weapons listed in this order,

10    you must surrender them to the Nassau County Police

11    Department.

12           This order is valid through July 23rd of 2038.

13    Do you understand the restrictions placed upon you,

14    Mr. Ramos, by this order?

15           THE DEFENDANT:  Yes, I understand.

16           THE COURT:  The Court is signing the order and

17    it is now issued.

18           People, anything else for the record?

19           MR. PERRI:  No, your Honor.

20           THE COURT:  Mr. Berger, anything else for the

21    record?

22           MR. BERGER:  No, your Honor.

23           THE COURT:  Thank you.  Good luck to you, sir.

24           THE CLERK:  Mr. Ramos, you have the right to

25    appeal from this sentence and these proceedings.  If you

 1       wish to appeal, you must file your notice of appeal with

 2       the clerk of this court within 30 days.  If you cannot

 3       afford a lawyer or the minutes of these proceedings, you

 4       may make application to the Appellate Division which

 5       will, upon being satisfied that you cannot afford the

 6       same, order that an attorney be appointed and the

 7       minutes provided without any charge to you.  Your lawyer

 8       is directed by the Court to advise you in full and to

 9       take necessary steps the indicated by you in this

10       regard.

11              And let the record reflect that I am serving

12       upon the defendant a copy of the order of protection.  I

13       am also serving defense counsel with a copy and the

14       People with two copies of the order of protection.

15              MR. BERGER:  Acknowledge receipt.  Let the

16       record reflect that we do intend to appeal this matter.

17       Our office will appeal it.

18              *         *         *

19              I, Cindy Kaye-Fink, Senior Court Reporter, hereby

20       certify that the foregoing is a true and correct transcript

21       of the within proceedings.

22

23

24              Cindy Kaye-Fink
                Senior Court Reporter

25