*To be argued by:*
DORI COHEN

*Argument Time:* 15 Minutes

# New York Supreme Court

## Appellate Division : Second Department

THE PEOPLE OF THE STATE OF NEW YORK,

*Respondent,*

– *against* –

DANIEL RAMOS,

*Defendant-Appellant.*

**TO BE HEARD ON THE
ORIGINAL PAPERS**

*A.D. No.* 2015-07623
*Ind. No.* 742N/14

## REPLY BRIEF FOR DEFENDANT-APPELLANT

N. SCOTT BANKS
*Attorney for Defendant-Appellant
Attorney in Chief
Legal Aid Society of Nassau County
40 Main Street, 3rd Floor
Hempstead, NY 11550
(516) 560-6400*

**OF COUNSEL:**
TAMMY FEMAN
DORI COHEN

# **TABLE OF CONTENTS**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    POINT ONE

    THE TRIAL COURT ERRED IN DETERMINING THAT THE
    SEVEN-YEAR-OLD COMPLAINANT WAS SWEARABLE
    AND IN NOT REVIEWING THAT DETERMINATION
    AFTER HER UNTRUSTWORTHY TESTIMONY . . . . . . . . . . . . . . . . . 1

    POINT TWO

    APPELLANT'S RIGHT TO PRESENT HIS DEFENSE AND SIXTH
    AMENDMENT RIGHT TO CONFRONT THE WITNESSES
    AGAINST HIM WERE VIOLATED WHEN THE TRIAL COURT
    WOULD NOT ALLOW COMPLAINANT'S MOTHER TO BE
    RECALLED TO THE WITNESS STAND TO TESTIFY TO HER
    STATE OF MIND IN RELATION TO A PRIOR INCIDENT, AND
    WHEN THE TRIAL COURT CURTAILED HER CROSS
    EXAMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    POINT THREE

    THE TRIAL COURT ERRED IN FAILING TO
    MEANINGFULLY RESPOND TO A JURY NOTE AND
    IN NOT ASKING THE JURY FOR FURTHER CLARIFICATION . . . . 6

    POINT FOUR

    THE TRIAL COURT'S BIAS AGAINST THE DEFENSE
    THROUGHOUT THE TRIAL DEPRIVED APPELLANT
    OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL AND
    HIS RIGHT TO PRESENT A DEFENSE . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT FIVE

THE TRIAL COURT ERRED IN ALLOWING BARAN TO
TESTIFY THAT COMPLAINANT TOLD HIM ABOUT PRIOR
INCIDENTS, WHEN THAT PRIOR CONSISTENT STATEMENT
WAS IMPROPER BOLSTERING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9


POINT SIX

THE JURY'S GUILTY VERDICTS WERE AGAINST
THE WEIGHT OF THE EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . .  11


POINT SEVEN

APPELLANT'S FOURTH AMENDMENT RIGHT AGAINST
UNREASONABLE SEARCHES AND SEIZURES WAS
VIOLATED WHERE THE POLICE DID NOT HAVE
PROBABLE CAUSE TO ARREST HIM, AND HIS
FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS
WAS VIOLATED WHERE HIS WRITTEN STATEMENT
WAS INVOLUNTARY AND USED AGAINST HIM AT TRIAL  . . . .  13


CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15


CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

## ARGUMENT

## INTRODUCTION

Appellant will respond to all of the points in Respondent's Brief except for Point Eight, and with respect to that point, appellant will rely on the arguments set forth in Point Seven of Appellant's Main Brief.

## POINT ONE

### THE TRIAL COURT ERRED IN DETERMINING THAT THE SEVEN-YEAR-OLD COMPLAINANT WAS SWEARABLE AND IN NOT REVIEWING THAT DETERMINATION AFTER HER UNTRUSTWORTHY TESTIMONY.
(Answering Respondent's Brief, Point Two)

In Point Two of Respondent's Brief, the People contend that Mya, the seven-year-old complainant, gave "sensible and responsive answers" in her testimony. See Respondent's Brief, p. 29. Nothing could be further from the truth. The People never cite any of Mya's testimony, either in their statement of facts or in point two of Respondent's Brief, which is no surprise given its confusing and contradictory nature. See Appellant's Main Brief, pp. 24-26.

The trial court erred in finding Mya swearable, over defense counsel's objection, after she stated at the swearability hearing that she did not know what an oath was, and that telling the truth meant "[y]ou raise your hand and that means you are telling the truth" about something that happened (T[1]:753-54). The trial court was

---

[1] Numbers in parentheses preceded by "T" refer to the transcribed minutes of the Jury Trial held before Hon. Teresa K. Corrigan on May 5-7, 11-14, 19-21 and 26-29, 2015, in Criminal Term Part 43 of the Supreme Court of Nassau County.

1

equivocal in its finding — stating that Mya was "a little younger than her years developmentally" (T:757-58). Further, that finding by the trial court runs contrary to the People's assertion that Mya demonstrated "sufficient intelligence and capacity to justify the reception" of even her unsworn testimony. See Matter of Arnaldo R., 24 A.D.3d 326, 327-28 (1st Dep't 2005) (against weight of evidence where seven-year-old witness's "account of appellant's conduct was at best confusing," and First Department doubted child understood nature of oath).

For all of the foregoing reasons, and for the reasons set forth in Point One of Appellant's Main Brief, the trial court committed reversible error in finding Mya swearable, in not revisiting that determination after her conflicting and confusing testimony, and in not deeming her lacking in sufficient intelligence and capacity to even give unsworn testimony. Appellant's convictions should be reversed and this matter remanded for a new trial before a different judge. C.P.L. § 60.20(2).

## POINT TWO

**APPELLANT'S RIGHT TO PRESENT HIS DEFENSE AND SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WERE VIOLATED WHEN THE TRIAL COURT WOULD NOT ALLOW COMPLAINANT'S MOTHER TO BE RECALLED TO THE WITNESS STAND TO TESTIFY TO HER STATE OF MIND IN RELATION TO A PRIOR INCIDENT, AND WHEN THE TRIAL COURT CURTAILED HER CROSS-EXAMINATION.**
(Answering Respondent's Brief, Point Three)

Defense counsel asked repeatedly for the trial court to allow Crystal, complainant's mother, to be recalled to the witness stand in order to question her about a prior incident involving the sexual abuse of her son by his uncle (T: 895-97, 900-08, 1077-104, 1152-55, 1292-94, 1370-71). Contrary to the People's assertion, the purpose did not concern Crystal's "credibility or the accuracy of her memory" (Respondent's Brief, p. 32), but rather, to show how that prior incident influenced her state of mind and caused her to view the current incident in a particular manner. The defense theory of the case was that, due to having lived through the traumatic prior incident involving her son, Crystal viewed the current incident, wherein she walked in on appellant with her daughter Mya, as one of sexual abuse of Mya by appellant, when it was merely appellant attempting to put on Mya's underwear and pajama bottoms. This view of the incident was corroborated by appellant's testimony and by the testimony of Dr. Reich, the defense expert, who stated that the DNA on Mya's underwear was more consistent with manual touching than with saliva.

Although the People attempt to distinguish appellant's cases (Respondent's Brief, pp. 33-34), they are all very much on point. People v. Ashner, 190 A.D.2d 238

3

(2d Dep't 1993), concerned the testimony of a key witness, as it does here. <u>Ashner</u> involved a key witness's motive to lie, whereas here it concerned Crystal's mistaken belief as to what type of incident she had walked in on.  Yet importantly, the main issue in <u>Ashner</u> and the instant matter is that the jury was precluded from having the defense theory of the case before it, and it was entitled to it.  That issue is found in appellant's remaining cases, including <u>People v. Baranek</u>, 287 A.D.2d 74 (2d Dep't 2001); and <u>People v. Rosovich</u>, 209 A.D. 554 (2d Dep't 1994).  One case not distinguished by the People is <u>People v. Gibian</u>, 76 A.D.3d 583, 585 (2d Dep't 2010), in which the curtailment of the defendant's testimony regarding his mother's state of mind, which would have helped to explain the defendant's theory of the case, was reversible error and not harmless. Here, it was testimony regarding the complainant's mother's state of mind that would have helped explain the defense theory of the case to the jury.

The People state that any error was harmless because defense counsel's comments during his summation resulted in him presenting "the defense he wanted" (Respondent's Brief, p. 34).  Yet those comments quoted in Respondent's Brief were solely stated in summation, which is not evidence, as the trial court told the jury seven times (T: 1394, 1410, 1415, 1416, 1442, 1479, 1485). The defense was precluded by the trial court from presenting its theory of the case to the jury — that the prior incident with Crystal's son and his uncle was the basis of her state of mind in forming an incorrect conclusion about the scene she had walked in on with Mya and appellant. The jury never heard about the prior incident.

4

For all of the foregoing reasons, and for the reasons set forth in Point Two of Appellant's Main Brief, the trial court committed reversible error in precluding defense counsel from recalling Crystal to the witness stand to testify to her state of mind in relation to a prior incident, and in curtaining her cross-examination. Appellant's convictions should therefore be reversed and a new trial should be ordered before a different judge.

## POINT THREE

### THE TRIAL COURT ERRED IN FAILING TO MEANINGFULLY RESPOND TO A JURY NOTE AND IN NOT ASKING THE JURY FOR FURTHER CLARIFICATION.
(Answering Respondent's Brief, Point Four)

In Point Four of Respondent's Brief, the People never quote the jury note directly. Rather, they summarize it and then state that "[t]he note was clear" (Respondent's Brief, p. 35). The note, however, was decidedly unclear, which is probably why the People did not quote it, and is definitely why there was so much discussion about it (T: 1597-99, 1602-03, 1605, 1614-19).

The second of the jury's five notes asked, *inter alia*, "to hear the 911 call from Crystal of the transcript, if it was on record. If it's on the record, can we see slash hear it" (T: 1597). Defense counsel wanted the trial court to ask for further clarification because there was testimony from Crystal in the record regarding the 911 call, even though the 911 call itself was not in the record, and the jury might have been referring to that. As stated in Appellant's Main Brief (pp. 35-36), the trial court had a duty to inquire further rather than merely advising the jury that the 911 call was not in evidence. The case cited by the People, People v. Ford, 30 A.D.3d 306 (1st Dep't 2006), is irrelevant because it concerned a court officer advising a jury that certain requested items were not in evidence.

For all of the foregoing reasons, and for the reasons set forth in Point Three of Appellant's Main Brief, the trial court committed reversible error in refusing to request clarification from the jury. Appellant's convictions should therefore be reversed and a new trial ordered before a different judge. See C.P.L. § 310.30.

6

## POINT FOUR

**THE TRIAL COURT'S BIAS AGAINST THE DEFENSE THROUGHOUT THE TRIAL DEPRIVED APPELLANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL AND HIS RIGHT TO PRESENT A DEFENSE.**
(Answering Respondent's Brief, Point Seven)

In Point Seven of Respondent's Brief, the People cite to C.P.L. § 610.25(1) for the proposition that the court was required by law "to retain confidential subpoenaed records to inspect them for relevance" (Respondent's Brief, p. 46), even though there is nothing in that statute pertaining to confidential records. Yet, defense counsel's complaint was that he could not review the records that were in the trial court's possession pursuant to a subpoena issued by him. According to C.P.L. § 610.25(2), "[i]n any case where the court receives or retains evidence prior to trial, it may, as may otherwise be authorized by law, grant the issuing party a reasonable opportunity to inspect such evidence." The trial court only turned over one page of the records, which was dated subsequent to the date of the incident, and therefore, according to defense counsel, irrelevant to the point he had been making (T:736-39).

Defense counsel had asked the trial court to sign another subpoena, this one for police department protocols in "interviewing children in alleged sex offense cases" (T: 731-34), which the trial court denied. The People refer to defense counsel's summation and his mention of police department protocols and "deficiencies in Baran's conduct," asserting that "even if the court's decision to deny the subpoena constituted error, the prejudicial effect of that error was alleviated" (Respondent's Brief, p. 47). However, comments made in summation are not evidence, as the trial

7

court told the jury seven times (T: 1394, 1410, 1415, 1416, 1442, 1479, 1485). Defense counsel was never able to put into evidence before the jury any specific protocols that were not followed. Any prejudice was not alleviated, contrary to the People's assertion.

The People maintain that the trial court's initial ruling in sustaining the prosecution's objection to defense counsel's statement that Dr. Reich taught law enforcement about DNA testing "was rendered moot" when "the court allowed him [defense counsel] to say that twice" (Respondent's Brief, pp. 47-48), yet the trial court sustained a further objection when defense counsel repeated the statement, thus not rendering it moot.

The People attempt to justify the injudicious remarks and sarcasm on the part of the trial judge (Respondent's Brief, pp. 48-49), but they miss the point that the judge's tone and manner towards defense counsel evinced a bias on the part of the judge which prejudiced appellant and deprived him of a fair trial.

For all of the foregoing reasons, and for the reasons set forth in Point Four of Appellant's Main Brief, the trial court abused its discretion in denying defense counsel's mistrial motions and motion to recuse itself. The cumulative errors by the court, and its bias against the defense, deprived appellant of his constitutional rights to present a defense and to a fair trial. Appellant's convictions should be reversed and this matter should be remanded for a new trial before a different judge. People v. Reynolds, 90 A.D.3d 956, 957 (2d Dep't 2011).

## POINT FIVE

## THE TRIAL COURT ERRED IN ALLOWING BARAN TO TESTIFY THAT COMPLAINANT TOLD HIM ABOUT PRIOR INCIDENTS, WHEN THAT PRIOR CONSISTENT STATEMENT WAS IMPROPER BOLSTERING.
(Answering Respondent's Brief, Point Five)

In Point Five of Respondent's Brief, the People maintain that defense counsel "attacked Mya's testimony about prior incidents as a recent fabrication" (Respondent's Brief, p. 36). In fact, defense counsel's cross-examination was directed towards the number of prior incidents, and to which people Mya told which numbers of incidents. It was the defense position that this had all been a fabrication from the very beginning, and not a recent one, and therefore Baran's testimony regarding Mya's affirmation of the alleged prior incidents was improper bolstering and should not have been admitted into evidence by the trial court. "If the same motive to falsify which exists at the time of the testimony existed at the time the prior consistent statement was made, the statement remains inadmissible." People v. McClean, 69 N.Y.2d 426,428 (1987). That was the case here.

Although the People now allege a motive for Mya to fabricate (Respondent's Brief, p. 37), they never offered one at trial.[2] Further, contrary to the People's assertion (Respondent's Brief, p. 38), it does not matter that the Baran testimony in question "constituted eight lines of transcript" (Respondent's Brief, p. 38); what is important is that it was put into evidence before the jury. The People do not cite to Mya's confusing and contradictory testimony, which was bolstered by the erroneous

---

[2] See generally People v. LaFontaine, 92 N.Y.2d 470, 474 (1998).

9

admission into evidence of Baran's testimony on the prior consistent statement. It was not a recent fabrication, there was no motive for any recent fabrication on the record, and Baran's testimony on this matter constituted improper bolstering. "[N]ot all inconsistencies developed on cross-examination imply that a witness' testimony is fabricated. Questions designed to demonstrate that the testimony is the product of confusion or mistake do not charge fabrication." People v. Seit, 86 N.Y.2d 92, 96 (1995).

For all of the foregoing reasons, and for the reasons set forth in Point Five of Appellant's Main Brief, the trial court committed reversible error in allowing Baran to testify that complainant told him about prior incidents when that prior consistent statement was improper bolstering. Appellant's convictions should be reversed and this matter should be remanded for a new trial before a different judge. People v. Rosario, 17 N.Y.3d 501, 513-14 (2011); McClean, 69 N.Y.2d at 430-31.

## POINT SIX

### THE JURY'S GUILTY VERDICTS WERE AGAINST THE WEIGHT OF THE EVIDENCE.

(Answering Respondent's Brief, Point Six)

In Point Six of Respondent's Brief, the People assert that "inconsistencies in Mya's testimony regarding uncharged abuse [. . .] could not serve as a legitimate basis" for appellant's claim that Mya's account was unworthy of belief.  See Respondent's Brief, pp. 40-41; Appellant's Main Brief, pp. 52-53.  The two cases cited by the People in support both deal with minor inconsistencies or discrepancies. See Respondent's Brief, p. 41. Here, Mya's testimony was riddled with contradictory and confusing statements, so much so that the People never quote from it in Respondent's Brief.  Even McAllister, the nurse who examined Mya on the night of the incident, testified that she would want to know if Mya had ever been sexually abused prior to that date, and if Mya had indicated yes, she would have written it down in the medical records (T:840-42).  There were no notes in Mya's medical records about any prior sexual abuse (T:841-42).  The notes stated that Mya was playful, alert, talkative, follows direction, answers questions (T:843).  This direct contradiction with Mya's unreliable testimony further undermines the jury's verdict of guilt beyond a reasonable doubt.  See Arnaldo R., 24 A.D.3d at 327-28 (seven-year-old complainant's testimony was "at best confusing" and "medical records undermined" the State's case).

Although the People take issue with the fact that the defense emphasized the omission of an interview of Mya by the police (Respondent's Brief, p. 41), it remains

11

that the normal procedures were not followed.  <u>See</u> Appellant's Main Brief, p. 54.
The People discuss the DNA evidence but fail to mention that the DNA of two males
were found on Mya's underwear, adding to reasonable doubt.  No explanation was
offered regarding the presence of the "unknown male" DNA.  Furthermore, the
amount of the DNA was more consistent with manual contact than with saliva, which
was consistent with appellant's testimony as to how he helped Mya put on her
underwear and pajama bottoms.

Although the People attempt to distinguish some of the cases cited in
Appellant's Main Brief (Respondent's Brief, p. 44), they fail to mention <u>People v.</u>
<u>Thompson</u>, 111 A.D.3d 56 (2d Dep't 2013), in which the defendant continuously
maintained his innocence, had never previously been convicted of a felony, had given
a statement to the police, and there was positive DNA evidence connecting him to the
crime.  This Court reversed the judgment of conviction even though "the stain on the
defendant's shirt and his statement to the police were legally sufficient to support the
judgment of conviction."  <u>Id</u>. at 67.  The same should be done here.

For all of the foregoing reasons, and for the reasons set forth in Point Six of
Appellant's Main Brief, the jury's verdicts of guilt beyond a reasonable doubt were
against the weight of the evidence.  Appellant's convictions should therefore be
reversed.  C.P.L. §§ 470.15(5), 470.20(5).

## POINT SEVEN

**APPELLANT'S FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES WAS VIOLATED WHERE THE POLICE DID NOT HAVE PROBABLE CAUSE TO ARREST HIM, AND HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WAS VIOLATED WHERE HIS WRITTEN STATEMENT WAS INVOLUNTARY AND USED AGAINST HIM AT TRIAL.**
(Answering Respondent's Brief, Point One)

In Point One of Respondent's Brief, the People attempt to distinguish <u>People v. Alberto</u>, 22 Misc.3d 786 (Dist. Ct. Suffolk County 2008), yet they misconstrue the purpose for which it was cited by appellant.  <u>See</u> Respondent's Brief, p. 25; Appellant's Main Brief, pp. 64-65.  It is true that, as the People stated, "the officer who translated the rights card into Spanish did not testify at the hearing" (Respondent's Brief, p. 25).  However, in <u>Alberto</u>, the officer who wrote the defendant's written statement did testify at the hearing, just as occurred in the instant matter, and that was the reason it was analogous.  In both <u>Alberto</u> and here, "the statement purportedly given by the defendant displays a fluency in the English language which is not consistent with the Trooper's account of the defendant's difficulties in speaking English." <u>Alberto</u>, 22 Misc.3d at 791.  Here, in a case where appellant asked that the Miranda rights card be read to him in Spanish, and where he had an interpreter with him every day of the trial, his written statement displayed a fluency in English which was inconsistent with his unmistakable preference for the Spanish language.

For all of the foregoing reasons, and for the reasons set forth in Point Eight of Appellant's Main Brief, there was no probable cause for appellant's arrest, his written

13

statement was given involuntarily, and therefore the oral and written statements and buccal swab should have been suppressed. Reversal is warranted. U.S. Const. amend. IV, XIV; N.Y. Const. art. 1, §§6, 12.

## CONCLUSION

**FOR THE ABOVE STATED REASONS, AND FOR THE REASONS SET FORTH IN APPELLANT'S MAIN BRIEF, APPELLANT'S CONVICTIONS SHOULD BE REVERSED AND THE INDICTMENT DISMISSED, OR IN THE ALTERNATIVE, A NEW TRIAL SHOULD BE ORDERED BEFORE A DIFFERENT JUDGE.**

Respectfully submitted,

N. SCOTT BANKS
Attorney in Chief
BY:

_Dori Cohen_

Dori Cohen
Attorney for the Defendant-Appellant
Legal Aid Society of Nassau County
40 Main Street, 3rd Floor
Hempstead, NY 11550
(516) 560-6400, ext. 06422

OF COUNSEL
TAMMY FEMAN
DORI COHEN

15

## CERTIFICATE OF COMPLIANCE
## Pursuant to 22 N.Y.C.R.R. §670.10.3(f)

The foregoing brief was prepared by computer.  A proportionally spaced typeface was used as follows:

      Name of typeface: Times New Roman
      Point Size:      14
      Line Spacing:    Double

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, proof of service, certificate of compliance, or any authorized addendum containing statutes, rules, regulations, etc., is 3,129.

16