**LEGAL AID SOCIETY OF NASSAU COUNTY, NEW YORK**
*APPEALS BUREAU*
40 Main Street, 3rd Floor, Hempstead, New York 11550
(516) 560-6400
Fax (516) 572-1957/1959

October 11, 2018

**N. Scott Banks**
**Attorney in Chief**

**Tammy Feman**
**Bureau Chief**

**Argun Ulgen**
**Dori Cohen**
**Marquetta Christy**
**Gianpaolo Ciocco**

Hon. Janet DiFiore
Chief Judge, Court of Appeals
20 Eagle Street
Albany, New York 12207-1095

Attention: John P. Asiello
     Clerk of the Court

       Re: **People v. Daniel Ramos**
          **Ind. No. 742N/14**
          **A.D. No. 2015-07623**
          **Application for Leave to Appeal**

Dear Judge DiFiore:

  With regard to the above-named defendant-appellant, I respectfully request that this letter be treated as an application for leave to appeal to the Court of Appeals on his behalf. On September 12, 2018, the Appellate Division, Second Department, affirmed with opinion a judgment of the Supreme Court of Nassau County (T. Corrigan, J.), rendered on July 24, 2015, convicting appellant of criminal sexual act in the first degree (P.L. § 130.50[3]), and endangering the welfare of a child (P.L. § 260.10[1]). Notice of Entry was received by appellant on September 17, 2018. Upon information and belief, there were no co-defendants in the instant matter.

  An oral hearing is requested. Enclosed please find copies of the briefs submitted to the Appellate Division, Second Department, along with its decision and opinion attached as Exhibit A. Relevant trial transcript pages are bound separately as Exhibit B.

  First, the Appellate Division, Second Department, erred when it found that "[t]he Supreme Court providently exercised its discretion in determining that the then seven-year-old complainant was competent to give sworn testimony." See Exhibit A, p. 2. At the swearability hearing, complainant stated that she did not know what an oath was, and that telling the truth meant "[y]ou raise your hand and that means you are telling the truth" about something that happened (T:753-54). Although complainant stated that she understood the difference between a truth and a lie, the trial court should not have deemed her swearable since she had no understanding of an oath, and therefore, its nature and consequences. It is well settled that a child cannot give sworn testimony even if he or she understands the difference between a truth and a lie, when there is no knowledge of the nature and consequences of an oath, which was the case here. See People v. Davis, 304 A.D. 421, 421 (1st Dep't 2003); People v. Ranum, 122 A.D.2d 959, 960-61 (2d Dep't 1986); People v. Smith, 104 A.D.2d 160, 163 (2d Dep't 1984); Appellant's Brief, pp. 23-26.

Contrary to the People's assertion that the complainant gave "sensible and responsive answers" in her testimony (Respondent's Brief, p. 29), one need only read the testimony to see that it was often contradictory and confusing (T:779-808); Appellant's Brief, pp. 24-26). The trial court further erred when it did not revisit its swearability determination following that testimony. The court could have determined that the complainant's testimony would be unsworn, and provided a jury charge on the need for corroboration of unsworn testimony, pursuant to C.P.L. § 60.20(3). In People v. Murphy, 139 Misc.2d 83 (Sup. Ct. Kings County 1988), the trial court found a nine-year-old witness to be swearable, and after his testimony, realized that determination was incorrect. "Under these circumstances, the trial court has an obligation to alter its determination. To hold otherwise would require that court to adhere mechanically to a ruling made in the exercise of its discretion which it knows to be erroneous." Id. at 87; Appellant's Brief, pp. 26-27, Appellant's Reply Brief, pp. 1-2. Review by this Court is necessary to clarify the statutory requirements of C.P.L. § 60.20, and to determine whether or not a swearability finding should be revisited subsequent to the child's testimony.

Second, the Appellate Division, Second Department, erred when it found that "the court's response to the jury note was appropriate." See Exhibit A, p. 2. The jury note asked "to hear the 911 call from [the complainant's mother] or the transcript, if it was on record. If it's on the record, can we see slash hear it" (T:1597). The trial court stated it would respond by advising the jury that an audiotape or transcript of the 911 call was not in evidence (T:1598). Defense counsel continuously objected thereafter, arguing that the court should make further inquiry because the complainant's mother had discussed the 911 call in her testimony on cross-examination, and that was in the record (T: 1598-99, 1602-03, 1605, 1614-18). The jury might not be "smart" enough or "sophisticated in the ways of the system" to ask again for the 911 testimony (T:1615). The court denied defense counsel's requests (T:1599, 1602-03, 1605, 1619). This was error.

C.P.L. § 310.30 states that, in response to a jury note asking for further information, the court "must give such requested information or instruction as the court deems proper." The court must respond meaningfully. People v. Malloy, 55 N.Y.2d 296, 302 (1982). In determining whether a court has abused its discretion, one factor to be evaluated is "the form of the jury's question, which may have to be clarified before it can be answered." Id. Here, the trial court abused its discretion in not seeking clarification of the jury note, despite defense counsel's repeated requests to do so. The court "abused its discretion by declining to provide the jurors with information that they plainly wanted and incorrectly characterizing the state of the evidence on the subject of their inquiry" by stating that "an audiotape or transcript of the 911 call was not in evidence" when in fact, the jury may have wanted to hear the complainant's mother's testimony about the 911 call. People v. Taylor, 26 N.Y.3d 217, 224-25 (2015). A court may request clarification from the jury and should have done so here, as in People v. Cordero, 308 A.D.2d 494, 494 (2d Dep't 2003); and in People v. Dini, 292 A.D.2d 631, 632 (2d Dep't 2002). This was error warranting reversal. See Appellant's Brief, pp. 35-36; Appellant's Reply Brief, p. 6. This issue ought to be reviewed by this Court so that trial courts can have clearer guidelines as to when to request clarification of jury notes, especially given the fact that this Court has recently been clarifying issues involving jury notes. See People v. Parker, 2018 N.Y. Slip.Op. 04776

(June 28, 2018); People v. Morrison, 2018 N.Y. Slip.Op. 04777 (June 28, 2018).

Third, the Appellate Division, Second Department, erred when it found that "[t]he Supreme Court providently exercised its discretion in denying defense counsel's motion to recall the complainant's mother to testify because defense counsel sought to cross-examine her about a matter that was collateral and would have caused delay." See Exhibit A, p. 2. In fact, defense counsel wanted to question the complainant's mother about a matter that was central to the defense theory of the case — that appellant was helping the complainant get dressed when the complainant's mother walked in on them and she jumped to an erroneous conclusion. Her state of mind was highly relevant to show that a similar traumatic incident had occurred in her past, and that would help explain her viewing the instant matter in a particular context that was unfavorable to appellant. "[T]he jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness's] testimony which provided 'a crucial link in the proof.'" People v. Ashner, 190 A.D.2d 238, 248 (2d Dep't 1993); see also People v. Baranek, 287 A.D.2d 74, 79-80 (2d Dep't 2001) ("[t]he severe restrictions placed by the trial court on the complainant's cross-examination prevented the defense from presenting its theory of the case to the jury"); Appellant's Brief, pp. 28-32.

In Baranek, the Second Department concluded that the jury should have been made aware of the complainant's psychiatric history "to assist them in assessing the reliability of her testimony and determining whether her account [. . .] was accurate." Id. at 79. Here, too, the jurors could have put the complainant's mother's testimony in its proper context had they known about her state of mind due to the prior traumatic incident involving her son, an incident about which the defense only acquired knowledge subsequent to the complainant's mother's testimony. See People v. Rosovich, 209 A.D.2d 554, 555 (2d Dep't 1994) (curtailment of cross-examination concerning matters "which tended to prove a motive in accusing the defendant of sodomy" reversible error); People v. Gibian, 76 A.D.3d 583, 585 (2d Dep't 2010) (curtailment of defendant's testimony regarding his mother's state of mind, which would help to explain his theory of the case, reversible error and not harmless); Appellant's Brief, pp. 32-33.

Contrary to the People's assertion, the purpose for recalling the complainant's mother to the witness stand did not concern her "credibility or the accuracy of her memory" (Respondent's Brief, p. 32), but rather, to show how that prior incident influenced her state of mind and caused her to view the current incident in a particular manner. The trial court's denial of the defense application was error and not harmless, as appellant was denied his constitutional right to present his theory of the defense to the jury and there was a reasonable possibility that the error might have contributed to appellant's convictions. Ashner, 190 A.D.2d at 248-49; People v. McLeod, 122 A.D.3d 16, 21 (1st Dep't 2014) (limitation of cross-examination violated defendant's right to confrontation and was not harmless). The jury was precluded from hearing testimony that would have explained why the complainant's mother jumped to the wrong conclusion upon seeing appellant with her daughter. This view of the incident was corroborated by appellant's testimony and by the testimony of the defense expert, who stated that the DNA on the complainant's underwear was more consistent with manual touching than with saliva. See Appellant's Brief, pp. 32-

34; Appellant's Reply Brief, pp. 3-5. Guidance by this Court is needed so that defendants are not denied their constitutional rights to present defenses where relevant information is obtained in the middle of a trial and recalling witnesses is necessary.

Fourth, the Appellate Division, Second Department, erred when it found that "[t]he record does not support the defendant's contention that the Supreme Court acted with bias against him in its evidentiary rulings." See Exhibit A, p. 2. Throughout the course of appellant's trial, many of the trial court's rulings violated appellant's due process rights and resulted "in a trial that was decidedly skewed in the People's favor." People v. Bryant, 34 Misc.3d 136A (App. Term 2d Dep't 2011) (quoting People v. Carroll, 95 N.Y.2d 375, 387 [2000]).

> The right to present a defense constitutes "a fundamental element of due process of law" and it is one of the "minimum essentials of a fair trial. . . . The right to offer the testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the [trier of fact] so it may decide where the truth lies."

People v. Bradley, 99 A.D.3d 934, 936 (2d Dep't 2012) (internal and end citations omitted).

Defense counsel twice moved for a mistrial based on the trial court's bias against the defense (T: 731-39, 744, 1612-19). Defense counsel contended that the judge, *inter alia*, yelled at him about the irrelevant rape shield law, made a sarcastic comment, agreed to review therapy records solely in camera so defense counsel could not see them, refused to sign a subpoena for police department protocols in "interviewing children in alleged sex offense cases," sustained objections to the defense summation but overruled objections to the prosecution's closing, and did not clarify a jury note despite repeated requests to do so by the defense. Defense counsel argued that, as a "career prosecutor," the judge was "instinctively protecting" the "whole complainant's case." Defense counsel correctly argued that the trial court had already decided the case in its mind, believed that the evidence was overwhelming against appellant, and its rulings were colored by that bias. It was therefore imperative for the trial court to recuse itself. See Pickering v. Lehrer, 25 A.D.3d 677, 679 (2d Dep't 2006) (excluding evidence that was unfavorable to the party of which it "evinced a clear bias in favor" was error and mandated a new trial before a different judge); Matter of Baby Girl Z., 140 A.D.3d 893, 894-95 (2d Dep't 2016) (hearing court "had a predetermined outcome of the case in mind" and "generally demonstrated bias," mandating new hearing before different judge); Doe v. Dep't of Education, 54 A.D.3d 352, 353-54 (2d Dep't 2008) (court improperly precluded relevant evidence and exhibited bias, resulting in remand for new trial before different justice); Abrams v. Renaissance Equity Holdings, 43 Misc.3d 57, 60 (App. Term 2d Dep't 2014) (matter reversed and remitted before a different judge where judge "made a number of intemperate remarks at trial which were indicative of possible bias," among other errors).

Although the People attempt to justify the injudicious remarks and sarcasm on the part of the trial judge (Respondent's Brief, pp. 48-49), they miss the point that the judge's

tone and manner towards defense counsel evinced a bias on the part of the judge which prejudiced appellant and deprived him of a fair trial. The cumulative errors by the trial court, especially when viewed through the judicial bias lens, served to deprive appellant of his constitutional rights to a fair trial and to present a defense. See People v. Dean, 50 A.D.3d 1052, 1055-56 (2d Dep't 2008); People v. Horton, 145 A.D.3d 1575, 1575-77 (4th Dep't 2016); People v. Slide, 76 A.D.3d 1106, 1108 (2d Dep't 2010); People v. Shanis, 36 N.Y.2d 697, 699 (1975). The deprivation of a defendant's constitutional right to a fair trial is not subject to harmless error analysis. People v. Robinson, 2017 N.Y. Slip.Op. 04473 (2d Dep't 2017); People v. Mees, 47 N.Y.2d 997, 998 (1979). This was reversible error. People v. Reynolds, 90 A.D.3d 956, 957 (2d Dep't 2011). See Appellant's Brief, pp. 37-41; Appellant's Reply Brief, pp. 7-8. Review by this Court is necessary so that trial courts can obtain unambiguous direction as to when recusal is essential.

Fifth, the Appellate Division, Second Department, erred when it found that "because defense counsel assailed the testimony of the complainant on cross-examination as a recent fabrication, the Supreme Court correctly admitted the prior consistent statement of the complainant on direct examination of a law enforcement witness." See Exhibit A, p. 2. The trial court in fact erred in allowing a police officer to testify that the complainant nodded her head up and down when he asked her if any incidents with appellant had occurred previously, in that those incidents were brought up on cross-examination merely to show the inconsistency in the number of times of those incidents, and not as an allegation of a recent fabrication. See (T: 908-35); Appellant's Brief, pp. 43-45.

In most cases, "a witness's trial testimony may not be bolstered with prior consistent statements because 'an untrustworthy statement is not made more trustworthy by repetition.'" People v. Rosario, 17 N.Y.3d 501, 513 (2011) (citations omitted). "[T]he admission of prior consistent statements may, by simple force of repetition, give to a [factfinder] an exaggerated idea of the probative force of a party's case." People v. Memon, 145 A.D.3d 1492, 1493 (4th Dep't 2016) (quoting People v. Smith, 22 N.Y.3d 462, 466 [2013]). However, "[w]hen a 'witness'[s] testimony is assailed — either directly or inferentially — as a recent fabrication, the witness may be rehabilitated' with a prior consistent statement made at a time predating the motive to fabricate." Id. (citations omitted). "[N]ot all inconsistencies developed on cross-examination imply that a witness' testimony is fabricated. Questions designed to demonstrate that the testimony is the product of confusion or mistake do not charge fabrication." People v. Seit, 86 N.Y.2d 92, 96 (1995).

Here, defense counsel had brought out the number of times of any alleged prior incidents merely to show the inconsistency, which was a reflection of lack of credibility, since the complainant had testified that she told the prosecutor it happened once previously, she had testified that she told her therapist it happened five times previously, and there was no notation in the examining nurse's notes about any prior incidents, which would have been noted there had the complainant told her about any. See (T: 910-13, 929-30); Appellant's Brief, p. 43. Defense counsel contended that in order for the prior consistent statement to be admitted into evidence, it must be a recent fabrication, that the witness "changed her story" and had "motive for recent fabrication" (T:926). The defense position

was that it was "a fabrication from the time of the arrest" and therefore, not a recent fabrication (T:926). A prior consistent statement could never be brought in for bolstering (T:927). Defense counsel maintained that the People had to "establish that there was a reason for her recent fabrication" and they had not done that, as it was the same motive since the time of appellant's arrest (T:928-29). "If the same motive to falsify which exists at the time of the testimony existed at the time the prior consistent statement was made, the statement remains inadmissible." People v. McClean, 69 N.Y.2d 426, 428 (1987). Although on appeal the People alleged a motive for the complainant to fabricate (Respondent's Brief, p. 38), they never offered one at trial. See generally People v. LaFontaine, 92 N.Y.2d 470, 474 (1998).

Contrary to the People's assertion (Respondent's Brief, p. 38), it does not matter that the police officer's testimony in question "constituted eight lines of transcript;" what is important is that it was put into evidence before the jury. This error was not harmless, because the improper bolstering led the jury to add credence to the complainant's testimony about prior incidents, and the jury may have been led to believe that appellant had a propensity towards the alleged conduct. This was error. See Appellant's Brief, pp. 42-46; Appellant's Reply Brief, pp. 9-10. Review by this Court is necessary because, as the decision stands, evidence can be brought in to improperly bolster a witness's testimony even though it was not assailed as a recent fabrication.

Sixth, the Appellate Division, Second Department, erred when it found that the Supreme Court did not err when it denied suppression of appellant's oral statements, written statements, and buccal swab, and when it found there was probable cause for appellant's arrest. See Exhibit A, pp. 1-2. The police arrested appellant based on the unreliable statements of a six-year-old with "no indicia of reliability" who was "repeating what her mother said" (H2:91-95). The buccal swab, and the statements, should have been suppressed as "the fruits of that unconstitutional seizure." People v. Cantor, 36 N.Y.2d 106, 114 (1975); see also People v. Bouton, 50 N.Y.2d 130, 134-36 (1980) (reversing sodomy and sexual abuse convictions finding no probable cause existed even where police obtained detailed statements from eleven-year-old victims).

The hearing court also erred in finding that appellant's written statement was given voluntarily when it was given in English, although he had asked for his Miranda rights to be read to him in Spanish and had written an apology letter at the request of the police in Spanish. Furthermore, "the statement purportedly given by [appellant] display[ed] a fluency in the English language which [was] not consistent with . . . [appellant's] difficulties speaking English." People v. Alberto, 22 Misc. 3d 786, 791 (Dist. Ct. Suffolk County 2008). Although the People attempt to distinguish the Alberto case (Respondent's Brief, p. 25), they misconstrue the purpose for which it was cited. It is true that, as the People stated, "the officer who translated the rights card into Spanish did not testify at the hearing." However, in Alberto, the officer who wrote the defendant's written statement did testify at the hearing, just as occurred in the instant matter, and that was the reason it was analogous. See Appellant's Brief, pp. 62-65; Appellant's Reply Brief, pp. 13-14. Appellant had a Spanish interpreter by his side during every day of the hearing and trial. He was not able

to effectively communicate in English and his statement was therefore involuntary, violating his Fourteenth Amendment right to due process. Blackburn v. Alabama, 361 U.S. 199, 205 (1960).

As there was no probable cause for appellant's arrest and his written statement was given involuntarily, the oral and written statements and buccal swab should have been suppressed. Reversal is warranted. U.S. Const. amend. IV, XIV; N.Y. Const. art. 1, §§ 6, 12. Guidance by this Court is needed because, as the decision stands, defendants can be found to have given voluntary statements even where there are language barriers, and probable cause can still be found even based on the statements of a six-year-old who was repeating back what she had just heard her mother state.

For all of these reasons, the various questions presented in defendant-appellant's case implicate, *inter alia*, the federal and state constitutional rights of all defendants to due process and a fair trial. U.S. Const. amend. XIV; N.Y. Const. art. I, §§ 6, 11. Therefore, we respectfully request that this Court grant leave in this case so that the State can have the benefit of authoritative holdings on any or all of the issues that have been raised by the appellant in this leave application and in the accompanying Appellant's Brief and Appellant's Reply Brief, filed with the Appellate Division, Second Department, incorporated and hereby made a part of this leave application.

Thank you for your attention to this matter.

Very truly yours,
N. SCOTT BANKS
BY:

Dori Cohen
Appeals Bureau
(516) 560-6422

cc: Appeals Bureau
Madeline Singas
Nassau County Acting District Attorney
Attn: Brian Witthuhn
262 Old Country Road
Mineola, NY 11501

(without enclosures and relevant transcript pages)

**Exhibit A**
**Appellate Division, Second Department, Decision and Opinion**
**Dated September 12, 2018**

# Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

D56365
O/hu

\_\_\_\_\_AD3d\_\_\_\_\_                                                Argued - April 23, 2018

SHERI S. ROMAN, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
JOSEPH J. MALTESE, JJ.

2015-07623                                                         DECISION & ORDER

The People, etc., respondent,
v Daniel S. Ramos, appellant.

(Ind. No. 742/14)

N. Scott Banks, Hempstead, NY (Tammy Feman and Dori Cohen of counsel), for appellant.

Madeline Singas, District Attorney, Mineola, NY (Tammy J. Smiley and Brian Witthuhn of counsel), for respondent.

Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Teresa K. Corrigan, J.), rendered July 24, 2015, convicting him of criminal sexual act in the first degree and endangering the welfare of a child, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.

ORDERED that the judgment is affirmed.

We agree with the hearing court's determination to deny that branch of the defendant's omnibus motion which was to suppress a statement that he made to law enforcement officials at the scene of the subject crimes because he was not the subject of custodial interrogation at that time (*see People v Vidal,* 44 AD3d 802; *People v Thomas,* 174 AD2d 447; *cf. People v Gamble,* 129 AD2d 470). We also agree with the hearing court's determination that the police had probable cause to arrest the defendant based on his statement and the accusations of the complainant and her mother (*see People v Mendoza,* 49 AD3d 559; *People v Bellow,* 255 AD2d 450; *People v Haynes,* 251 AD2d 595). Moreover, the record supports the hearing court's determination to deny that branch of the defendant's omnibus motion which was to suppress his statement made at the police station. The statement was made voluntarily after the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights (*see Miranda v Arizona,* 384 US 436; *People v Currie,* 131 AD3d 1265; *People v O'Malley,* 282 AD2d 884). Contrary to the defendant's contention, a buccal

swab of his cheek was properly obtained following his lawful arrest and upon his consent (*see Schneckloth v Bustamonte*, 412 US 218; *People v Kuhn*, 33 NY2d 203; *People v Bowen*, 229 AD2d 954; *People v Delosh*, 195 AD2d 769; *People v Osburn*, 155 AD2d 926).

The Supreme Court providently exercised its discretion in determining that the then seven-year-old complainant was competent to give sworn testimony. The examination of the child revealed that she knew the difference between telling the truth and telling a lie, promised to tell the truth, and indicated that she would be punished if she lied (*see* CPL 60.20[2]; *People v Nisoff*, 36 NY2d 560, 566; *People v Mendoza*, 49 AD3d 559; *Matter of James N.*, 19 AD3d 1047; *People v McIver*, 15 AD3d 677).

Contrary to the defendant's contention, because defense counsel assailed the testimony of the complainant on cross-examination as a recent fabrication, the Supreme Court correctly admitted the prior consistent statement of the complainant on direct examination of a law enforcement witness (*see People v McDaniel*, 81 NY2d 10, 18; *People v Walsh*, 289 AD2d 517; *People v Wilens*, 198 AD2d 463).

The Supreme Court providently exercised its discretion in denying defense counsel's motion to recall the complainant's mother to testify because defense counsel sought to cross-examine her about a matter that was collateral and would have caused delay (*see People v Cordero*, 306 AD2d 9; *People v Samuels*, 119 AD2d 706).

The defendant's contention that the Supreme Court failed to provide a meaningful response to a jury note is without merit. The jury note requested "to hear the 911 call from [the complainant's mother] or the transcript, if it was on record. If it's on the record, can we see/hear it." It is undisputed that the court informed the jury that no 911 call or transcript of that call was part of the evidence in the case. Therefore, the court's response to the jury note was appropriate.

The record does not support the defendant's contention that the Supreme Court acted with bias against him in its evidentiary rulings (*see People v Argentieri*, 66 AD3d 558; *People v Casey*, 61 AD3d 1011; *People v Love*, 307 AD2d 528; *People v Maxam*, 301 AD2d 791).

In fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15[5]; *People v Danielson*, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383; *People v Bleakley*, 69 NY2d 490). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80).

ROMAN, J.P., COHEN, MILLER and MALTESE, JJ., concur.

ENTER:

Aprilanne Agostino
Clerk of the Court

September 12, 2018      Page 2.
PEOPLE v RAMOS, DANIEL S.